UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AMAR GUEYE,                                              :        04 Civ. 6029 (SHS)
                                                         :        <u>OPINION & ORDER</u>
                        Plaintiff,                       :
                                                         :
        -against-                                        :
                                                         :
DONALD EVANS, SECRETARY,                                 :
DEPARTMENT OF COMMERCE                                   :
                                                         :
                        Defendant.                       :
-------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

       Plaintiff Amar Gueye, proceeding pro se, has sued the Secretary of the Department of Commerce alleging that Gueye was the victim of various adverse employment actions on the basis of his race, color, national origin and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., all in connection with his employment of less than one month with the United States Census Bureau. Gueye also contends that he was terminated in reprisal for his having complained to an Equal Employment Opportunity investigator. After the close of discovery, defendant moved for summary judgment in his favor pursuant to Fed. R. Civ. P. 56. As explained below, that motion is granted: Gueye's claim of religious discrimination fails because Gueye was not threatened with discipline on account of his religion, and Gueye's claims of racial discrimination and wrongful retaliation fail because Gueye has not presented materially disputed facts sufficient to rebut defendant's legitimate, nondiscriminatory and nonretaliatory reasons for his termination.

I. <u>Background</u>[1]

On December 28, 1999, Gueye, who is black and from Senegal, was hired to work as a recruiting assistant for the Local Census Office of the United States Census Bureau located in Harlem (the "Harlem LCO") in connection with the 2000 Census. (Def.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1") ¶¶ 2-3.) Each LCO conducts the Census Bureau's operations for its particular area. (<u>Id.</u> ¶ 2.) Gueye's job as recruiting assistant at the Harlem LCO required him to canvas the streets of Harlem in an effort to hire other individuals to assist in administering the census. (<u>Id.</u> ¶ 4.) He was hired for eight weeks only, with his term scheduled to expire on February 22, 2000. (Decl. of Lester A. Farthing dated July 13, 2000 ("Farthing Decl.") ¶ 11.)

Gueye's short tenure at the Harlem LCO was marked by constant turmoil. At some point early on, Gueye overheard a co-worker who was speaking Spanish at the time refer to him as a "vendejo."[2] (Affidavit of Amar Gueye dated May 19, 2000, submitted in connection with EEOC Complaint No. 00-63-00355D ("Gueye Aff."), attached as Ex. 4 to the Declaration of Lawrence H. Fogelman dated July 18, 2006 ("Fogelman Decl.")) In response, Gueye told the coworker to watch her mouth. (<u>Id.</u>) The co-worker was not a supervisor but was of lower or equal stature at the Census Bureau as Gueye. (<u>See</u> Deposition of Amar Gueye dated Jan. 3, 2006 ("Gueye Dep."), Tr. at 126-27, attached as Ex. 3 to Fogelman Decl.)

---

[1] Defendant's notice of motion was accompanied by a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" setting forth Gueye's obligations pursuant to Fed. Rule Civ. P. 56 and Local Civil Rule 56.1 to present admissible evidence in response to the summary judgment motion. In response to that notice and the motion, Gueye simply requested that his case proceed to trial. Given his failure to contest the facts set forth by defendant in his statement of undisputed material facts pursuant to Local Civil Rule 56.1, those facts are deemed admitted as a matter of law. See <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 31 n.1 (2d Cir. 1998).

[2] "Vendejo," or its variant "pendejo," is translated as "fool" or "idiot." <u>See</u> Collins Spanish Dictionary 377 (2d Ed. 1993).

Shortly after this incident, Gueye told officials at the Harlem LCO that in the past he had been held up at gunpoint in the Harlem neighborhood he had been assigned to canvas and had been threatened by his assailant's family members after he identified the assailant in court. (Def.'s 56.1 ¶ 6.) He requested a transfer to an LCO in the Bronx, but that request was denied (id. ¶¶ 10-14; Gueye Aff.); instead, he was demoted to the position of recruiting clerk – which accommodated his personal issues because it involved indoor work – on January 16, 2000. (Def.'s 56.1 ¶ 9.)

On January 14, 2000 – after the conversation in which he was called a "vendejo" and after he was denied a transfer, but before he was demoted – Gueye contacted Amy Hendry, an Equal Employment Opportunity investigator who was a specialist for the Census Bureau, to complain about these incidents. (Id. ¶ 25; Farthing Decl. ¶ 10.) He told Hendry that racial slurs had been directed at him by a co-worker. (E-mail from Amy Hendry to Patricia A. Valle dated Jan. 14, 2000 ("Hendry E-Mail"), attached as Ex. 9 to Fogelman Decl.) At Gueye's request, Henry contacted Patricia Valle, a manager in Gueye's chain of command, to relate Gueye's complaints. (Id.)

Ten days later – on January 24 – Gueye had two distinct confrontations with Harlem LCO employees. During one, Gueye instigated an argument with a fellow employee who took over common desk space that Gueye had been using after Gueye stepped away. (Id. ¶ 22; Gueye Dep. pp. 332-37). The other, more substantial, altercation began over a dispute regarding whether Gueye's timesheet for that day was accurate. Monica Taylor and Denise Watkins, assistant managers at the Harlem LCO, believed that Gueye had logged time for periods that he did not work. (Affidavit of Monica Taylor dated August 4, 2000 ("M. Taylor Aff.") ¶¶ 9-10, attached as Ex. 1 to

Fogelman Decl.)  Taylor, who is African-American, contends that Gueye grew irate at the accusation, and began to curse at her and accuse her of being a racist.  (Id. ¶ 11.)  Gueye also engaged in a shouting match with Watkins.  (Id. ¶ 12; Def.'s 56.1 ¶ 21; Gueye Dep. pp. 322-31.)  He asserts that during the confrontation Watkins – who is also African-American – cursed at him, attacked him, and used "racial slurs," the specifics of which he could not remember.  (Gueye Dep., Tr. at 323, 329.)  According to LCO employees, Gueye was so hostile during the shouting match with Watkins that they contemplated calling the police.  (Affidavit of Renee Taylor dated July 20, 2000 ("R. Taylor Aff.") ¶¶ 21-22, attached as Ex. 2 to Fogelman Decl.)  Following the January 24 incidents, Gueye was fired effective Jan. 31, 2000, one month after he arrived and three weeks prior to the time his temporary term was to expire.  (Def.'s 56.1 ¶¶ 23-24.)  Defendant contends that Gueye was fired because of his behavior on January 24; Gueye maintains that he was fired for discriminatory reasons.

Finally, Gueye contends that prior to his termination he requested but was denied a day off for the Muslim holiday Eid ul-Fitr, which marks the last day of the holy month of Ramadan.  (Id. ¶ 17.)  He had indicated on a job questionnaire that his religious beliefs would not interfere with his job requirements.  (Id. ¶ 16.)

Two years and nine months later – in September 2003 – Gueye commenced the present action by filing a complaint with the United States District Court for the Southern District of Ohio.  He asserted that the refusal to transfer him to another LCO, his demotion to recruiting clerk, and his eventual termination were made on the basis of his race, national origin, color, and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).  Additionally, he asserted that the refusal to grant

4

him a day off for the holiday of Eid ul-Fitr constituted religious discrimination in employment in violation of Title VII, and that his eventual termination constituted unlawful retaliation for his having contacted an EEO officer about his complaints of discrimination.

On June 16, 2004, the matter was transferred to this Court pursuant to 28 U.S.C. § 1406(a) for improper venue. In his motion for summary judgment, the Secretary contends that Gueye cannot make out a prima facie case of discrimination or retaliation and that, even if he could, Gueye cannot rebut the legitimate, nondiscriminatory reason the Secretary articulates for the alleged adverse employment actions.

II.     DISCUSSION

 A. *The Summary Judgment Standard*

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995); LaFond v. Gen. Physics Serv. Corp., 50 F.3d 165, 171 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); see also LaFond, 50 F.3d at 171. At the summary judgment stage, plaintiff must come forward with "concrete evidence from which a reasonable juror could return a verdict in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), including some indication that the defendant acted with the requisite

discriminatory intent.  Smith v. American Express Co., 853 F.2d 151, 154 (2d Cir. 1988); Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004).

    B. *Plaintiff's Claim for Discrimination on the Basis of His Race, Color and National Origin*

Gueye alleges that the Census Bureau's refusal to transfer him to a different LCO; decision to demote him to recruiting assistant; and eventual termination of him were made on the basis of his race, color, national origin, and religion in violation of 42 U.S.C. § 2000e-2(a)(1).  That provision makes it unlawful to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of each of the characteristics Gueye alleges.  Id.

Defendant asserts that Gueye can neither make out a prima facie case of discrimination nor rebut its legitimate, nondiscriminatory reason for his termination.  Pursuant to the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), Gueye must first make out a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he was performing his duties satisfactorily; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances suggesting discrimination on the basis of his membership in the protected class.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  If Gueye can establish a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment actions.  Finally, if defendant meets this burden, Gueye must prove that the

proffered reason is pretextual and that he was more likely than not the victim of discrimination.  Id.

Contrary to defendant's contention, Gueye can meet the initial burden of stating a prima facie case.  He has met the first three factors because (i) he is black and therefore a member of a protected class; (ii) although there is substantial evidence in the record reflecting some troubles at the workplace involving Gueye, the Court at present finds – given that defendant does not dispute the point – that Gueye was performing his duties satisfactorily; and (iii) his demotion and eventual termination were adverse employment actions.  There is less evidence in the record regarding the fourth and final factor, namely, circumstances suggesting discriminatory intent.  As an initial matter, that a co-worker who was not in a supervisory relationship vis-à-vis Gueye and had no role in firing him referred to him as a "vendejo" does not suggest that his demotion and termination were made with discriminatory intent.  See Minton v. Lenox Hill Hospital, 160 F. Supp. 2d 687, 695 (S.D.N.Y. 2001) (finding that employees' "[discriminatory] remarks are irrelevant because none of these employees had a role in the decision to dismiss plaintiff"); Gorley v. Metro-North Commuter R.R., No. 99 Civ. 3240, 2000 U.S. Dist. LEXIS 18427, at *18 (S.D.N.Y. Dec. 21, 2000) ("As a general matter, stray comments are not evidence of discrimination if . . . they are made by individuals without decision-making authority."); De la Concha v. Fordham Univ., 5 F. Supp. 2d 188, 194 (S.D.N.Y. 1998) (noting that "proof of pretext cannot rest upon 'statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself. . . .'" (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S. Ct. 1775, 104 L. Ed. 2d 228 (1989) (O'Connor, J. concurring))).

However, in addition to the "vendejo" incident, Gueye stated at his deposition that a supervisor – Denise Watkins – used racial slurs during the January 24 confrontation over his timesheet that led, at least in part, to his termination. Although Gueye's recollection of that incident is entirely vague and he cannot remember any particular slur that Watkins used, Watkins was his supervisor and was involved in the decision to terminate him, (M. Taylor Aff. ¶ 7; R. Taylor Aff. ¶ 10). These facts distinguish this case from those in which isolated racial slurs were made either by an individual unconnected with the adverse employment action or at a temporally distant time from that action. Compare Alexander v. Computer Scis. Corp., 392 F. Supp. 2d 229, 234 (D. Conn. 2005); De la Concha, 5 F. Supp. 2d at 192; with McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997) (where supervisor who allegedly directed slur at plaintiff was not involved in decision to fire plaintiff, district court did not err in granting summary judgment for defendant); Legendre v. Chase Manhattan Bank, No. 94 Civ. 2911, 1996 U.S. Dist. LEXIS 13221, at *19 (S.D.N.Y. Sept. 9, 1996). According Gueye a significant benefit of the doubt as a pro se plaintiff, the Court finds for purposes of analysis that he has stated a prima facie case of discrimination.

Pursuant to the McDonnel Douglas framework, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment actions. With regard to both the Harlem LCO's refusal to transfer Gueye, as well as its subsequent demotion of Gueye to recruiting clerk, defendant has provided such a reason. The record – undisputed by Gueye – indicates that the Census Bureau did not permit recruiting assistants and clerks to transfer offices; rather, temporary employees such as Gueye had to apply to the specific LCO at which they were to work. (Def.'s 56.1 ¶¶ 11-13; Farthing

Decl. ¶ 8.)  Therefore, when Gueye informed his supervisors that he did not want to work outdoors in Harlem for personal reasons, the LCO had no choice but to provide him with a desk job.  (Id. ¶¶ 7-9.)  Whether good policy or not, this is a legitimate, nondiscriminatory reason for the decision to demote Gueye to a desk job, and Gueye cannot in turn meet his burden of establishing pretext because he points to no evidence whatsoever calling that reason into question.

With regard to Gueye's termination, defendant's proffered nondiscriminatory reason is Gueye's aggressive and inappropriate behavior during his two separate altercations with colleagues on January 24, 2000.  Several co-workers attested to Gueye's hostility on those occasions, and it was surely reasonable for Harlem LCO officials to terminate Gueye as a result.  See, e.g., Goldschmidt v. N.Y. State Affordable Hous. Corp., 380 F. Supp. 2d 303, 314 (S.D.N.Y. 2005).

Because defendant has articulated legitimate, nondiscriminatory reasons for each of the adverse employment actions, the burden shifts back to Gueye to demonstrate that these reasons are actually pretexts for discrimination against Gueye.  McDonnell Douglas, 411 U.S. at 804.  On the state of the record, however, there are no disputed facts which, if proven true, could lead a rational juror to find that the legitimate reasons proffered for Gueye's termination were pretextual.  Although Gueye has not submitted any evidence in his defense, the Court notes that the only possible evidence of pretext here is Gueye's unsubstantiated allegation that Denise Watkins, the African-American supervisor whose confrontation with Gueye preceded his termination, used unspecified racial slurs during that confrontation.  At his deposition, Gueye had no recollection of any particular slur Watkins used, nor is there any indication that others present during that

9

altercation overheard Watkins employ a slur.  (Gueye Dep., Tr. at 325-26.)  In fact, Gueye referenced an unidentified alleged slur solely in the context of his contention that Watkins "cursed" or "cussed" at him.  (Id. at 329.)  Moreover, his allegation that a co-worker called him a "vendejo" aside, Gueye did not mention any slurs in the affidavit he submitted in support of his EEO complaint.

As such, armed only with the entirely vague and conclusory assertion that a supervisor used an unrecalled racial slur during the confrontation that precipitated his termination, Gueye has not demonstrated facts sufficient to find that the proffered, nondiscriminatory reason for his termination is pretextual.  He has thus has failed to raise a materially disputed issue sufficient to survive defendant's motion for summary judgment.  See Souffrant v. Rose House, No. 96 Civ. 4657, 1998 U.S. Dist. LEXIS 20063, at *11 (E.D.N.Y. Dec. 22, 1998) (no genuine issue of fact raised where, inter alia, plaintiff alleging discrimination could not remember the date or content of alleged slur); cf. Ford v. West, 222 F.3d 767, 777 (10th Cir. 2000).  No reasonable juror could find on the basis of Gueye's vague and unsubstantiated accusation that he was fired because of his race rather than because of his refractory behavior, and defendant is accordingly entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

    C. *Plaintiff's Claim for Discrimination on the Basis of His Religion*

Gueye contends that the Secretary's refusal to permit him to take a day off from work for Eid ul-Fitr violated his rights pursuant to Title VII to be free from employment discrimination on the basis of his religion.  To establish a prima facie case for religious discrimination Gueye must present evidence that "(1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employer[] of

10

this belief; and (3) [he was] disciplined for failure to comply with the conflicting employment requirement."  Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001).

Gueye cannot make out a prima facie case of religious discrimination because even crediting his allegations regarding the Eid ul-Fitr holiday, Gueye cannot establish that he was the victim of any employment discipline.  Courts in this district and elsewhere have repeatedly held that an individual must have suffered some type of discipline or demotion – or at least the threat of discipline or demotion – in order to establish a prima facie case of religious discrimination pursuant to Title VII.  See Philbrook v. Ansonia Bd. of Education, 757 F.2d 476, 481 (2d Cir. 1985) ("A plaintiff in a [Title VII] case makes out a prima facie case of religious discrimination by proving . . . he or she was disciplined for failure to comply with the conflicting employment requirement." (quoting Turpen v. Missouri-Kansas-Texas Railroad Co., 736 F.2d 1022, 1026 (5th Cir.1984)) (internal quotation marks omitted)); Bowles v. New York City Trans. Auth., No. 00 Civ. 4213, 2006 U.S. Dist. LEXIS 32914, at *32-33 (S.D.N.Y. May 23, 2006); Garvin v. Potter, 367 F. Supp. 2d 548, 564 (S.D.N.Y. 2005) (where plaintiff was asked but not required to work holidays and was not disciplined for declining to work holidays, prima facie case of religious discrimination not established); Zacharowicz v. Nassau Health Care Corp., No. 05 Civ. 4510, 2005 U.S. Dist. LEXIS 21052, at *9-12 (E.D.N.Y June 29, 2005) (plaintiff could not establish prima facie case of religious discrimination based on requirement that he work on certain religious holidays where there was no suggestion that he was ever disciplined for declining to work on those days or threatened with discipline in the event that he did not work).

Gueye has simply proffered no evidence demonstrating that he was threatened with discipline were he not to have worked on Eid ul-Fitr.  Indeed, he has not even claimed he was so threatened.  Thus, there are no material facts in dispute on this issue and defendant is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56 as to plaintiff's claim of religious discrimination pursuant to Title VII.

### D. Plaintiff's Claim for Retaliation

Title VII prevents employers from discriminating against an employee because he has opposed "any practice made an unlawful employment practice by this subchapter," such as racial discrimination.  42 U.S.C. § 2000e-3(a) (2003).  Gueye contends that defendant violated Title VII by firing him in retaliation for his having contacted an EEO officer to discuss his allegations of discrimination in the workplace.[3]  As with Gueye's substantive discrimination claims, in the absence of direct evidence of a violation of Title VII, Gueye's claim is subject to the tripartite McDonnell Douglas framework and he must therefore first make out a prima facie case of retaliation.  Richardson v. Dep't. of Correctional Serv., 108 F.3d 426, 443 (2d Cir. 1999).  To do so, Gueye must establish "(1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision." Id. (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996)).

---

[3] It is unclear whether Gueye asserts that the other alleged adverse employment actions – the refusal to transfer, the demotion, and the failure to give him a day off for Eid ul-Fitr – are retaliatory.  In any event, the Court has already determined that the Eid ul-Fitr incident did not constitute an adverse employment action.  Additionally, it is uncontested that the decision to not transfer and instead to demote Gueye occurred before Gueye spoke to the EEO investigator. (Def.'s 56.1 ¶ 26.)  As such, the Court interprets Gueye's claim for retaliation to relate only to his termination.

Gueye has stated a prima facie case because (i) his contact with an EEO officer regarding alleged discrimination is a protected activity; (ii) his termination was an adverse employment decision; and (iii) although defendant contends that temporal proximity is insufficient, on its own, to meet the causal connection requirement, the very case defendant cites for this proposition held that a temporal distance of two months provided sufficient circumstantial evidence of causal connection.  See Lamberson v. Six West Retail Acquisition, Inc., 122 F. Supp. 2d 502, 512 (S.D.N.Y. 2000); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995) (timing of termination – a few weeks after protected activity – sufficient to make out prima facie case).  Because Gueye was fired less than three weeks after he first contacted EEO Officer Amy Hendry, and because at least one supervisor involved in the decision to terminate him was aware of that contact (see Hendry E-Mail), Gueye can make out a prima facie case of causal connection.

However, defendant proffers a legitimate, nonretaliatory reason for Gueye's termination: once again, that the aggressive behavior displayed by Gueye during the January 24 altercations with co-workers prompted officials at the Harlem LCO to fire him.  There is simply no evidence in the record suggesting that this reason was a pretext for firing Gueye because he had spoken with an EEO officer.  Watkins' alleged use of a slur, even if could establish pretext in connection with Gueye's race discrimination claim – which the Court has found it cannot – is simply inapposite in the context of Gueye's retaliation claim.  Moreover, temporal proximity, which is sufficient to state a prima facie case of retaliation, is insufficient to rebut defendant's proffered nonretaliatory motive.  See Hardekopf v. Sid Wainer & Son, No. 02 Civ. 3251, 2004 U.S. Dist. LEXIS 19603, at

*23 (S.D.N.Y. Sept. 29, 2004); Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 291 (S.D.N.Y. 1999). Thus, even crediting Gueye's version of events, no rational jury could find that he was fired in retaliation for his having contacted an EEO investigator and defendant is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56 with respect to this claim.

### III.    CONCLUSION

Defendant is granted summary judgment pursuant to Fed. R. Civ. P 56 with respect to Gueye's claim of religious discrimination because he never suffered discipline or the threat of discipline in connection with his holiday request. The motion is granted with respect to Gueye's claims of discrimination on the basis of his race and in retaliation for his protected activity because there is no evidence to rebut defendant's proffered legitimate, nondiscriminatory and nonretaliatory reasons for refusing to transfer, demoting, and eventually firing Gueye. The Clerk of Court is directed to enter judgment dismissing the complaint.

Dated: New York, New York
       November 13, 2006

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

14